UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE SADLIK,

    Plaintiff,

v.

                              Case No. 08-12936

NORFOLK SOUTHERN RAILWAY CO.,

    Defendant,                         Hon. John Corbett O'Meara

and

NORFOLK SOUTHERN RAILWAY CO.,

    Defendant/Third-Party Plaintiff,

v.

BLUELINX CORPORATION,

    Third-Party Defendant.
_____/

## **OPINION AND ORDER**

       Before the court are four motions for summary judgment: (1) Norfolk Southern's motion on Counts II and III of Plaintiff's second amended complaint, filed December 9, 2009; (2) Norfolk Southern's motion on Count I of its third-party complaint, filed December 9, 2009; (3) BlueLinx's motion on Count I of its cross-claim against Norfolk Southern, filed December 31, 2009; and (4) Norfolk Southern's motion on Count II of BlueLinx's cross-claim, filed December 31, 2009. These matters have been fully briefed. The court heard oral argument on February 4, 2010, and took the motions under advisement.

## BACKGROUND FACTS

Plaintiff Dwayne Sadlik was employed by Norfolk Southern ("NS") as a train conductor. He alleges that he was injured when a piece of lumber fell from a train car and struck him. At the time, he was part of a NS crew providing rail services to a BlueLinx warehouse in Grand Rapids, Michigan. Sadlik filed a complaint against NS and BlueLinx, alleging the following causes of action: Count I, violation of the Federal Employer's Liability Act ("FELA") against NS for failure to provide Plaintiff with a reasonably safe place to work; Count II, violation of the Federal Safety Appliance Act, against NS; Count III, violation of 49 C.F.R. § 215 Appendix D, against NS, and Count IV, negligence against BlueLinx.[1]

NS filed a third-party complaint against BlueLinx, alleging as follows: Count I, indemnity; Count II, indemnity; and Count III, contractual cost-sharing. NS essentially alleges that BlueLinx is responsible for all or part of NS's liability pursuant to the Sidetrack Agreement entered into by NS and BlueLinx's predecessors. BlueLinx filed a cross-claim against NS, seeking indemnification pursuant to the Sidetrack Agreement: Count I, indemnity; Count II, contribution; and Count III, contractual cost-sharing.

On August 27, 2007, Sadlik was working as a conductor and was in charge of a crew providing rail services to BlueLinx in Grand Rapids. The crew was preparing to remove empty railcars from the BlueLinx warehouse. Sadlik began to release the handbrakes on the empty railcars and to visually inspect them. Sadlik alleges that, as he was walking alongside a railcar, a piece of

---

[1] The court references Plaintiff's second amended complaint, filed August 14, 2009.

lumber used as dunnage (material used to secure a load in transit) fell on him, causing him injury. Sadlik asserts that he suffered a brain injury and can no longer work.[2]

## LAW AND ANALYSIS

**I.    Standard of Review**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must view the facts and any reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

**II.    NS's Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint**

NS seeks partial summary judgment on Counts II and III of Plaintiff's complaint. Plaintiff has chosen not to respond to NS's motion regarding Count II (violation of the Federal Safety Appliance Act). Accordingly, the court will grant summary judgment in favor of NS on that claim.

In Count III, Plaintiff alleges that NS is liable under FELA for violating railroad freight car safety standards, 49 C.F.R. Part 215, Appendix D. FELA provides a federal cause of action against a railroad company for employees injured as a result of their employer's negligence. <u>See</u> 45 U.S.C.

---

[2] The facts surrounding Sadlik's accident are contested. A BlueLinx employee, Joe Zalenski, testified that he saw Sadlik climb up onto the railcar and use his brake stick to pry at the dunnage attached to the bulkhead of the railcar, that the dunnage then collapsed upon Sadlik, and that Sadlik fell to the bed of the railcar and rolled off onto the ground below. These contested facts are not material, however, to the motions before the court.

3

§ 51; Borger v. CSX Transp., Inc., 571 F.3d 559, 563 (6th Cir. 2009). FELA requires a railroad company to provide a reasonably safe place to work. Borger, 571 F.3d at 563. "A plaintiff may demonstrate liability as a matter of law if he proves that a railroad company violated a safety statute that establishes an absolute duty on the railroad company. If a plaintiff cannot point to a specific safety statute that the railroad violated, he can still prevail by proving the 'traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" Id. (citations omitted).

Plaintiff contends that NS violated the following safety regulation:

> At each location where a freight car is placed in a train and a person designated under § 215.11 is not on duty for the purpose of inspecting freight cars, the freight car shall, as a minimum, be inspected for the immediately hazardous conditions listed below that are likely to cause an accident or casualty before the train arrives at its destination. **These conditions are readily discoverable by a train crew member in the course of a customary inspection.**
>
> 1. Car body:
>    (a) Leaning or listing to side.
>    (b) Sagging downward.
>    (c) Positioned improperly on truck.
>    (d) Object dragging below.
>    (e) Object extending from side.
>    (f) Door insecurely attached.
>    (g) Broken or missing safety appliance.
>    (h) Lading leaking from a placarded hazardous material car.
>
> 2. Insecure coupling.
> 3. Overheated wheel or journal.
> 4. Broken or extensively cracked wheel.
> 5. Brake that fails to release.
> 6. Any other apparent safety hazard likely to cause an accident or casualty before the train arrives at its destination.

49 C.F.R. Part 215, Appendix D (emphasis added). This appendix must be understood in reference to 49 C.F.R. § 215.13, which provides, in part:

4

(a) At each location where a freight car is placed in a train, **the freight car shall be inspected before the train departs.** This inspection may be made before or after the car is placed on the train.

(b) At the location where an inspector designated under § 215.11 is on duty for the purpose of inspecting freight cars, the inspection required by paragraph (a) of this section shall be made by that inspector to determine whether the car is in compliance with this part.

(c) **At a location where a person designated under § 215.11 is not on duty for the purpose of inspecting freight cars, the inspection required by paragraph (a) shall, as a minimum, be made for those conditions set forth in Appendix D to this part.**

49 C.F.R. § 215.13 (emphasis added). In this case, § 215.13(c) applies, as no designated inspector was present; thus the responsibility for inspecting the train cars was that of a train crew member.

It is undisputed that Plaintiff was in the process of inspecting the train cars when he was injured. It is also undisputed that the train had not yet departed. The regulation at issue requires that the train cars be inspected "before the train departs." There is no evidence that NS violated this regulation; indeed, Plaintiff was in the process of completing the required inspection before the departure of the train when he was injured. Because Plaintiff cannot demonstrate that this regulation was violated, he cannot support his FELA claim on this theory.[3] The court will grant summary judgment in favor of NS on Count III of the second amended complaint.

## III. NS and BlueLinx's Indemnity Claims

NS and BlueLinx have filed cross-motions for summary judgment on their indemnity claims (Count I of NS's third-party complaint and Count I of BlueLinx's cross-claim). Sadlik's injury took

---

[3] Plaintiff can still attempt to show negligence on the part of NS under FELA, as is alleged in Count I of the second amended complaint.

5

place on BlueLinx's property, specifically on a sidetrack that is the subject of an agreement between NS and BlueLinx.[4] Section 8 of the Sidetrack Agreement governs the liability of the parties. It provides, in part:

> 8. <u>Liability in Connection with Sidetrack</u>
>
> \* \* \*
>
> (b) <u>Other Liability.</u> Except as in this agreement otherwise specifically provided, in respect of all loss or damage to property and in respect of injury to or death of persons caused by or in connection with the construction, operation, maintenance, repair, replacement, renewal, use, presence or removal of said sidetrack –
>
> (i) The Railroad [NS] shall assume responsibility for and hold the Industry [BlueLinx] harmless and defend the Industry from all losses (including claims for injuries to employees of the Industry or of the Railroad), expenses, attorneys' fees, damages, claims and judgments arising from or growing out of the actionable acts or omissions of the Railroad, its agents or employees, solely or in conjunction with a third person;
>
> \* \* \*
>
> (c) **Notwithstanding anything contained in Section 8(b), and irrespective of any negligence of the Railroad, the Industry assumes sole responsibility for and agrees to indemnify, save harmless and defend the Railroad from and against all claims, actions or legal proceedings arising, in whole or in part, from** (1) the failure of the Industry to comply with requirements set forth in Sections 3 and 7 hereof; **(2) any claims, actions or legal proceedings under the Federal Employer's Liability Act and any amendments to said Act now or hereafter in effect,**

---

[4] The agreement was entered into in 1978 by NS's predecessor, Consolidated Rail Corporation, and BlueLinx's predecessor, Georgia-Pacific Corporation. The parties agree that the Sidetrack Agreement is in force and applies here. The parties further agree that Michigan law applies to the agreement's interpretation.

> **alleging or claiming, in legal effect, that the Railroad failed to correct or guard against an unsafe condition or failed to furnish a safe place to work or** (3) the following non-standard conditions: [none].

NS Ex. 1 at 6-7 (emphasis added).

BlueLinx contends that Section 8(b)(i), which requires NS to be responsible for its own acts and omissions, applies. NS argues that Section 8(c), which requires BlueLinx to indemnify it for any FELA claims, applies. NS is correct. Under the plain language of the agreement, "[n]otwithstanding anything contained in Section 8(b) and irrespective of any negligence of the Railroad," BlueLinx must "indemnify, save harmless and defend the Railroad" from any claims brought under FELA. Sadlik's remaining claim (Count I of the complaint) arises under FELA.

BlueLinx argues that the indemnity provision only applies to FELA claims that result from BlueLinx's failure to maintain the sidetrack under Sections 3 and 7 of the agreement. The plain language of the agreement is not so limiting, however, and applies to "*any*" FELA claims.[5]

The Sidetrack Agreement is clear and enforceable under Michigan law. See North American Specialty Ins. v. Goldstein Enterp., Inc., 2008 WL 820351 (W.D. Mich. 2008) (citing Title Guaranty & Surety Co. v. Roehm, 215 Mich. 586, 592 (1921)) ("The ordinary rules of contract interpretation apply to indemnity contracts."); Mahnick v. Bell Co., 256 Mich. App. 154, 158-59, 662 N.W.2d 830 (2003) (interpretation of clear contract terms is a question of law for the court). Pursuant to the agreement's terms, BlueLinx must indemnify and defend NS against Plaintiff's FELA claims.

---

[5] The cases cited by BlueLinx at the hearing do not change this conclusion, as they do not interpret language that is the same or similar to that contained in the parties' Sidetrack Agreement. See Union Pacific R.R. Co. v. Dolese Bros. Co., 163 Fed. Appx. 652 (10th Cir. 2005); Illinois Central R.R. Co. v. Standard Oil Co., 292 F. Supp. 337 (S.D. Miss. 1968).

Therefore, the court will grant NS's motion for summary judgment and deny BlueLinx's motion for summary judgment on this issue.

## IV.    NS's Motion to Dismiss BlueLinx's Contribution Claim

BlueLinx also asserts a contribution claim against NS.  NS argues that this claim must be dismissed because contribution claims are not generally viable in Michigan after tort reform.  See M.C.L. §§ 600.2956, 600.2957, 600.6304.  Moreover, in light of the court's ruling that BlueLinx must indemnify NS, BlueLinx cannot sustain its contribution claim.  See  M.C.L. § 600.2925a(7) ("[T]he indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.").  Accordingly, the court will dismiss BlueLinx's contribution claim.

## ORDER

IT IS HEREBY ORDERED that Norfolk Southern's December 9, 2009  motion for partial summary judgment on Counts II and III of Plaintiff's second amended complaint is GRANTED.

IT IS FURTHER ORDERED that Norfolk Southern's December 9, 2009 motion for summary judgment on Count I of its third-party complaint is GRANTED.

IT IS FURTHER ORDERED that BlueLinx's December 31, 2009 motion for summary judgment on Count I of its cross-claim against Norfolk Southern is DENIED.

IT IS FURTHER ORDERED that Norfolk Southern's December 31, 2009 motion on Count II of BlueLinx's cross-claim is GRANTED.


s/John Corbett O'Meara
United States District Judge


Date:  February 11, 2010

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 11, 2010, using the ECF system and/or ordinary mail.

                s/William Barkholz
                Case Manager